IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
WILKESBORO DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| ) | Case No. 09-50127 |
| CURTIS DEAN SHEA ) | CHAPTER 7 |
| ADRIENNE BLOWE SHEA ) | |
| ) | |
| Debtors. ) | |

**REPLY IN SUPPORT OF MOTION TO VACATE CONTEMPT ORDER**

First Revenue Assurance, LLC, (hereinafter "First Revenue") by and through its attorney, Brett P. Riley hereby submits the within Reply brief in support of its motion to vacate the Court's Order Of Civil Contempt And Judgment of July 23, 2010.

1. The Debtors have filed their Response To Creditor's Motion To Vacate Contempt Order (Docket No. 70) ("Debtors' Response"). Stating in essence, "we mailed it," the Debtors' Response misses the point altogether. First Revenue's motion contesting this Court's Order holding it in contempt argues that the Order is void because it is based on a motion that was never served. Further, First Revenue's motion explains that it was neither ignoring the Court nor the Debtors. Rather, First Revenue did not respond because it was not aware that any relief was being sought against it. First Revenue does not dispute that the Debtors mailed their motion; First Revenue's argument is that the Debtors' mailing does not equal service. More importantly, in this case mailing also did not amount to either actual or constructive notice. First Revenue simply had no

knowledge of the contempt proceedings, and therefore was unaware of the need to respond.

2.      The Debtors first argument, offered without any support, is that their motion for sanctions is neither an adversary proceeding nor a contested matter motion under Fed. R. Bankr. P. 9014. *Debtors' Response* ¶ 36.  First Revenue recognizes that, "debtors may utilize motion practice to seek to hold creditors in contempt for allegedly violating the discharge injunction." *In re Adesta Communications, Inc.,* Slip Op., Aug. 5, 2010 WL 3089167 (Bankr.D.NE) (No. BK01-83236-TJM), see also *In re Bock,* 297 B.R. 22, 32 (Bankr.W.D.N.C. 2002) (holding that no adversary proceeding is mandated by the rules for debtors to pursue relief for Section 524 discharge violation).  But if the Debtors choose to use a motion to pursue their claim, they still have to do it right.

3.      Courts in this district have held that a motion for sanctions similar to the one filed by the Debtors in this case are a contested matter. E.g. *In re Peterson*, 297 BR 467, 470 (Bankr.W.D.N.C. 2003).  Though the Debtors' motion is not captioned as a motion for contempt, that is what they would need to establish in pursuing the sanctions requested. See *In re Robb,* 399 B.R. 171 (Bankr.N.D.W.Va. 2008) (holding that violations of discharge injunction are punishable by contempt) also, *Cox v. Zale Delaware, Inc.,* 239 F. 3d 910, 917(7th Cir. 2001) (Contempt is sole remedy for violation of discharge injunction) and, *Walls v. Wells Fargo,* 276 F.3d 502 (9th Cir. 2002)(Same).  As the Debtors' motion is actually one for contempt, it is governed by Fed. R. Bankr. P. 9020 and 9014. *Englund v. SBS Fin'l Serv., Inc. (In re Englund),* 401 B.R. 377 (B.A.P. 8th Cir. 2009).  For these reasons, the Debtors motion, seeking sanctions against an entity not previously noticed in the administrative case or otherwise subject to the jurisdiction of

the court, falls within the ambit of the provisions of Rule 9014 and merits the due process accorded to an adversary proceeding. *In re Moore,* 290 BR 287, 292 (Bankr.E.D.N.C. 2003).

4. In light of the above, First Revenue submits that the issue for this Court to decide is whether or not Debtors have made a prima facie showing that service was achieved? If so, then under a Rule 60(b) analysis the burden shifts to First Revenue to establish that the service was nevertheless invalid, or that First Revenue's lack of response was otherwise excusable. However, if the Debtors have not made a prima facie showing that the service affected, then the burden is not on First Revenue, but rather, the burden remains with the Debtors to establish to the satisfaction of the court that service was made. "It is the burden of the debtors as movants to ensure that creditors specifically impacted by the relief requested in a motion be properly notified in accordance with the relevant rules of procedure and that the notice satisfies due process requirements." *In re Miller,* 428 B.R. 791 (Bankr. S.D.OH. 2010).

5. The Debtors' Response, read in conjunction with the facts as they appear in the record, reveals that the Debtors did not serve their motion upon First Revenue's registered agent. *Debtors' Response,* ¶ 11. The Debtors then attempt to mislead this Court into believing that they did in fact, serve First Revenue's registered agent with their motion. *Debtors' Response,* ¶ 46. However, it is clear that the only document the Debtors ever sent to First Revenue's registered agent was a copy of the July 23, 2010 Order. Obviously once First Revenue received the Order through its registered agent, it had actual as well as constructive notice of these proceedings, and was therefore able to respond timely.

6.  The Debtors then argue at length about the various mailings they sent to First Revenue. The Debtors argument is without merit because they have not shown that First Revenue's registered agent and/or corporate officers were not easily and readily ascertainable or that service in the manner they have attempted in this case was superior to the established and customary method of service upon a corporation. Of course the Debtors could have served First Revenue's registered agent early on without any difficulty.[1] Only when the Order was a *fait accompli* to the tune of $20,000.00 and rising, did the Debtors serve the Order properly.

7.  The issue of serving the motion through the registered agent is important because as First Revenue is involved in a large volume of collection efforts across the United States, it receives a large volume of correspondence, i.e. return mail, disputes and bankruptcy notices. This correspondence is frequently delivered to the P.O. Box and mailing address at issue in this case, however First Revenue does not process communications of this type with special oversight or priority as opposed to communications received through its registered agents. Specifically, the only thing that happens with bankruptcy communications (of any sort) received through the P.O. Box or mail is that First Revenue updates its computer record to code the debtor's file as bankrupt and then every attempt is made to cease collection efforts.

8.  First Revenue's computer files were coded on October 29, 2009, to reflect the Debtors as having filed bankruptcy. This coding was either the result of a communication from First Revenue's client, Verizon, or through First Revenue's

---

[1] Debtors' counsel was aware of the statutory framework for corporations that provides for the appointment and maintenance of a registered agent. In fact, per the records of the North Carolina Secretary of State's office, Debtors' counsel was the registered agent for at least two separate corporate entities during the entirety of these proceedings. http://www.secretary.state.nc.us/Corporations/ accessed Sept. 13, 2010.

4

personnel updating the file that a notice of bankruptcy was received. Importantly, if it was the result of First Revenue's employees processing the mail, those persons are not trained to read and interpret those documents beyond noting that the debtor has filed for bankruptcy protection.

9.  In this case, not only did First Revenue cease collection activity, but less than a week after having coded the file as bankrupt, First Revenue closed the file and returned it to Verizon. Having closed the file on November 2, 2009, First Revenue's mail processing vendor and First Revenue's own personnel then had no reason to review any subsequent communications that were received at the P.O. Box or mailing address regarding this file.[2] As such, no review took place. While this practice at first blush may seem rather cavalier, it is in fact what most large financial entities and creditors are forced to do in light of the overwhelming press of mail received from the various bankruptcy courts across the nation. This is because First Revenue is so frequently listed in bankruptcies, that it routinely receives a large volume of bankruptcy notices, copies of motions for relief from stay, objections to plans, notices of continued 341 meetings, and other such correspondence. It simply is not economically feasible for First Revenue to devote resources to the bankruptcy notices for files which it has closed and in which it no longer has any involvement.

10. Another explanation for First Revenue proceeding in this fashion is that in addition to the service of process rules mandated by Fed. R. Bankr. P. 9014 and 7004, there exists a statutory requirement, N.C. Gen. Stat. § 57C-7-07, that First Revenue maintain a registered agent specifically for this purpose. "The creditor's 'right to assume'

---

[2] The Debtors seem to suggest that some of the subsequent communications were never received by First Revenue. *Debtors' Response,* ¶¶ 15, 19, and 27. First Revenue also has no record of those communications.

5

that a particular level of notice will be given is based upon the notice provisions in the applicable statute." *In re Arch Wireless, Inc.,* 534 F.3d 76 (1st Cir., 2008). Because First Revenue is required to maintain registered agents, it believes that it is also entitled to rely upon the registered agents as the place where any notices seeking to hale it into distant courts will be received. First Revenue is cognizant that its activities in collecting debts from consumers may expose it to lawsuits, including lawsuits in bankruptcy courts. First Revenue relies upon the provisions of Fed. R. Bankr. P. 7004, which establish that any such suits or claims will be received through its registered agents or corporate officers. For that reason, communications received at its registered agents are immediately reviewed by First Revenue's corporate officers. The corporate officers then make a determination as to whether the communication needs further review by First Revenue's legal counsel. As set forth above, First Revenue doesn't have that system in place for the P.O. Box.  In other words, if the court finds that the Debtors "service" as performed in this case is adequate to bind First Revenue, then First Revenue questions why it is required to spend resources maintaining registered agents across the United States?

11.     Put simply, the rules requiring service of process upon a corporation's registered agent or officer are in place to prevent exactly what has occurred in this case. When a judgment or order such as in this case is entered without due process, it is void. *In re Allen,* 417 B.R. 850 (E.D. KY. 2009). In this case, First Revenue was never listed in the mailing matrix, had not received notice of the bankruptcy filing, nor the discharge. The debtors herein are unable to establish that First Revenue had actual or constructive notice of their motion, and therefore the Order entered thereon should be vacated.

12. First Revenue is confident that the analysis as set forth above and in its Motion to Vacate Contempt Order are correct and that the Order should be vacated. However, First Revenue expressly reserves the right to address the Order holding it in Contempt under the provisions of Fed. R. Bankr. P. 7055, F. R. Civ. P. 55(c), and 60(b)(1), (3), and (6).

WHEREFORE, First Revenue respectfully submits the above Reply In Support of Motion to Vacate Contempt Order.

DATED this 20th day of September, 2010.

*s/ Brett P. Riley*_____
Brett P. Riley, Colorado Bar Number 34025
Attorney for First Revenue Assurance, LLC
The Law Offices of Irvin Borenstein
3025 S. Parker Road, Suite 711
Aurora, CO 80014
Telephone: 303-751-3025
Fax: 303-751-5600
E-mail: bpriley@loib.net

7

CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing **Reply In Support Of Motion To Vacate Contempt Order** was served via the Court's electronic noticing system ("ECF"), and by placing the same in the United States mail, postage prepaid, this 20th day of September, 2010, to the following:

Curtis Dean Shea
Adrienne Blowe Shea
106 Locomotive Dr.
Mooresville, NC 28115

Micheal Shane Perry
Shane Perry, PLLC
174 N. Main St.
Mooresville, NC 28115

Barrett L. Crawford
Chapter 7 Trustee
P.O. Box 580
Morganton, NC 28680

U.S. Bankruptcy Administrator
Western District of North Carolina
402 W. Trade St. Suite 200
Charlotte, NC 28202-1669

First Revenue Assurance, LLC
Attn: Watse Krol
4500 Cherry Creek Dr. South
Suite 450
Denver, CO 80246

                                    *s/ Sarah Stearns*_____